Case 4:21-cv-01812   Document 13   Filed on 09/13/21 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
September 13, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK LOLLIE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JUNE LOLLIE, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION H-21-1812 |
| v. | § § | |
| COLONNADES HEALTH CARE CENTER LTD. CO. D/B/A THE COLONNADES AT REFLECTION BAY REHABILITATION AND CANTEX HEALTH CARE CENTERS, | § § § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

COVID hit nursing homes and other long-term care facilities early and hard. June Lollie lived in The Colonnades at Reflection Bay Rehabilitation from November 2019 until she died in October 2020 from the COVID she contracted that summer. Her relative and the representative of her estate, Patrick Lollie, sued The Colonnades and Cantex Health Care Centers II, LLC, alleging that they failed to respond adequately to the pandemic, failed to follow COVID precautions and protocols, and failed to properly monitor and care for Ms. Lollie, causing her death.

The petition, filed in state court, asserted only state-law claims. The Colonnades removed, arguing three grounds for federal removal jurisdiction: (1) complete preemption under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d (the "PREP Act"); (2) embedded federal jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005); and (3) the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

(Docket Entry 1 at ¶¶ 2, 15, 43). Lollie has moved to remand, and The Colonnades has responded. (Docket Entry Nos. 10, 12).

Based on the pleadings, the motion and response, the record, and the applicable law, the court grants the motion to remand, but declines to award the fees Lollie incurred in bringing and litigating the remand motion. The case is remanded to the 149th Judicial District Court of Brazoria County, Texas. The reasons are set out below.

**I.    Legal Standard**

"Under th[e] 'well-pleaded complaint' rule, a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). "A federal question exists only where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Bd. of Comm'rs v. Tenn. Gas Pipeline Co., LLC*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008)). "The party seeking to assert federal jurisdiction . . . has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

**II.    Discussion**

    **A.    Complete Preemption**

Complete preemption is an exception to the "well-pleaded complaint rule." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 773 (5th Cir. 2003). The Supreme Court has construed certain federal statutes as "not only preempting state law but also authorizing removal of actions that sought relief only under state law." *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–7 (2003) (§§ 85 and 86 of the National Bank Act, 12 U.S.C. § 38, provide for complete preemption); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (complete preemption under § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132); *Avco Corp. v. Machinists*, 390 U.S. 557, 560 (1968) (§ 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, provides complete preemption). Preemption applies when the federal statute "so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

"When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Hoskins*, 343 F.3d at 773 (quoting *Beneficial*, 539 U.S. at 8). *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("'[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed." (quoting *Beneficial*, 539 U.S. at 8)). Complete preemption of a state-law cause of action requires showing that Congress intended federal law to be the only cause of action. *Hoskins*, 343 F.3d at 775–76 (citing *Beneficial*, 539 U.S. at 9).

To establish complete preemption in the Fifth Circuit, the defendant must show that: "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought

3

under the federal law be [exclusive]." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (citation omitted).

Lollie's petition alleges that The Colonnades "failed to properly monitor and care for" Ms. Lollie in light of the COVID threat. (Docket Entry No. 1-3 at ¶ 14). The petition alleges that "[f]acilities such as [The] Colonnades were to ensure regular COVID-19 symptom screening for residents, staff, vendors, and visitors," and that their staffs were "expected to use personal protective equipment at all times when interacting with residents, staff, vendors, and visitors." (*Id.* at ¶ 15). Lollie further alleges that The Colonnades failed "to prevent [Ms.] Lollie from contracting COVID-19" and failed to supervise and train its staff and personnel to provide her adequate medical care. (*Id.* at ¶¶ 20-21, 32). Lollie enumerates his failure-to-act claims as follows:

- "[f]ailure to implement an effective infection control program pursuant to state law";
- "[f]ailure to properly train staff";
- "[f]ailure to employ adequate staff";
- "[f]ailure to identify changes in conditions"; and
- "[f]ailure to protect Ms. Lollie from foreseeable health and safety standards."

(Docket Entry 10 at 4).

Under the PREP Act's civil-enforcement provisions, an "eligible individual" who has sustained a "covered injury" that is "directly caused by the administration or use of a covered countermeasure" may recover from the federal Covered Countermeasure Process Fund. 42 U.S.C. § 247d-6e(a)–(e). The PREP Act's liability protections provide that:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration

4

>[by the Secretary] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)-(b). The PREP Act creates an exclusive federal cause of action as an exception to immunity for "death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1).

The Secretary of the Department of Health and Human Services issued its first COVID-19 Declaration on March 17, 2020. *See* Declaration Under the Public Readiness and Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020). The Declaration defined "administration" as "extend[ing] only to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities." *Id.* at 15,200. Covered Countermeasures include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." *Id.* at 15,202.

The First Amendment to the Secretary's Declaration added "respiratory protective device" to the definition of Covered Countermeasures. *See* Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 21,012, 21,014 (Apr. 15, 2020). The Second Amendment expanded "Covered Countermeasures" to include measures that "limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause." *See* Second Amendment to

Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35,100, 35,102 (June 8, 2020).

The majority of courts considering this issue have held that the PREP Act does not prohibit plaintiffs from bringing state-law tort claims based on alleged failures to use covered countermeasures or failures to implement appropriate safety protocols related to COVID-19, including failures to provide adequate levels of staffing and training to staff. *See Saunders v. Big Blue Healthcare*, ___ F. Supp. 3d ___, 2021 WL 764567, at *6–8 (D. Kan. Feb. 26, 2021) ("[T]he PREP Act was designed to address claims arising from the administration or use of covered countermeasures, rather than claims alleging a failure to act in the face of the threat of COVID-19 altogether."); *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 250–52 (E.D.N.Y. 2021), *appeal filed*, No. 21-505 (2d Cir. Mar. 3, 2021); *Bolton v. Gallatin Ctr. for Rehab. & Healing LLC*, ___ F. Supp. 3d ___, 2021 WL 1561306, at *6–8 (M.D. Tenn. Apr. 21, 2021); *Winn v. Cal. Post Acute LLC*, ___ F. Supp. 3d ___, 2021 WL 1292507, at *5 (C.D. Cal. Apr. 6, 2021), *appeal filed*, No. 21-55468 (9th Cir. May 7, 2021); *Est. of Jones through Brown v. St. Jude Operating Co., LLC*, ___ F. Supp. 3d ___, 2021 WL 886217, at *6–7 (D. Or. Mar. 8, 2021); *Lutz v. Big Blue Healthcare*, 480 F. Supp. 3d 1207, 1218 (D. Kan. Aug. 19, 2020).[1] As explained by

---

[1] One judge issued several opinions on the same day, all reaching the same conclusion. *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2259-HLT-JPO, 2020 WL 4815099 (D. Kan. Aug. 19, 2020); *Brown v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1196 (D. Kan. 2020); *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184 (D. Kan. 2020); *Rodina v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2319-HLT-JPO, 2020 WL 4815102 (D. Kan. Aug. 19, 2020); *Fortune v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2318-HLT-JPO, 2020 WL 4815097 (D. Kan. Aug. 19, 2020); *Baskin v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2267-HLT-JPO, 2020 WL 4815074 (D. Kan. Aug. 19, 2020); *Block v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2262-HLT-JPO, 2020 WL 4815076 (D. Kan. Aug. 19, 2020); *Harris v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2266-HLT-JPO, 2020 WL 4815098 (D. Kan. Aug. 19, 2020); *Long v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2263-HLT-JPO, 2020 WL 4815079 (D. Kan. Aug. 19, 2020); *Campbell v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2265-HLT-JPO, 2020 WL 4815082 (D. Kan. Aug. 19, 2020). Additional supporting authority includes: *Martinez v. Spruce Holdings*, No. 1:21-cv-0739-AWI-SAB, 2021 WL 3883704, at *3–4 (E.D. Cal. Aug. 31, 2021); *Est. of Heim v. 1495 Cameron Ave., LLC*, No. 21-cv-6221 PA (ADSx), 2021 WL 3630374, at *4 (C.D. Cal. Aug. 17, 2021); *Est. of Jenkins v. Beverly Hills Senior Care Facility, Inc.*, No. 21-cv-4902-JFW(KSx), 2021 WL 3563545, at *5 (C.D. Cal. Aug. 12, 2021); *Est. of Serrano v. San Antonio*

one court, the PREP Act's "evident purpose is to embolden caregivers, permitting them to administer certain encouraged forms of care (listed COVID 'countermeasures') with the assurance

*Acute LLC*, No. EDCV 21-1169 JGB (SHKx), 2021 WL 3777158, at *2 (C.D. Cal. July 21, 2021), *appeal filed*, No. 21-55921 (9th Cir. Aug. 25, 2021); *Est. of Acosta v. WDW Joint Venture*, No. 21-cv-05762 PA (MRWx), 2021 WL 3089332, at *5 (C.D. Cal. July 21, 2021), *appeal filed*, No. 21-55893 (9th Cir. Aug. 20, 2021); *Elliot v. Care Inn of Edna LLC*, No. 3:20-cv-3185-S, 2021 WL 2688600, at *4 (N.D. Tex. June 30, 2021); *Reed v. Sunbridge Hallmark Health Servs.*, No. 21-cv-3702-JFW(AGRx), 2021 WL 2633156, at *7 (C.D. Cal. June 25, 2021), *appeal filed*, No. 21-55808 (9th Cir. July 29, 2021); *Khalek v. S. Denver Rehab., LLC*, ___ F. Supp. 3d ___, 2021 WL 2433963, at *6 (D. Colo. June 11, 2021); *Thomas v. Century Villa Inc.*, No. 2:21-cv-03013-MCS-KS, 2021 WL 2400970, at *6 (C.D. Cal. June 10, 2021), *appeal filed*, No. 21-55742 (9th Cir. July 15, 2021); *Brannon v. J. Ori, LLC*, No. 2:21-cv-00058-JRG-RSP, 2021 WL 2339196, at *3 (E.D. Tex. June 8, 2021); *Rae ex. rel. Montisano v. Anza Healthcare Inc.*, No. 21-cv-287-DMS (JLB), 2021 WL 2290776, at *3 (S.D. Cal. June 4, 2021); *Gwilt v. Harvard Square Retirement & Assisted Living*, ___ F. Supp. 3d ___, 2021 WL 2373768, at *5 (D. Colo. May 7, 2021); *Shapnik v. Hebrew Home for Aged At Riverdale*, No. 20-cv-6774 (LJL), 2021 WL 1614818, at *16 (S.D.N.Y. Apr. 26, 2021); *Padilla v. Brookfield Healthcare Ctr.*, No. 21-cv-2062-DMG (ASx), 2021 WL 1549689, at *5 (C.D. Cal. Apr. 19, 2021); *Perez ex. rel. Est. of Lozano v. Se. SNF, LLC*, ___ F. Supp. 3d ___, 2021 WL 1381232, at *2 (W.D. Tex. Apr. 12, 2021), *appeal filed*, No. 21-50413 (5th Cir. May 14, 2021); *Lopez v. Advanced HCS, LLC*, ___ F. Supp. 3d ___, 2021 WL 1259302, at *5 (N.D. Tex. Apr. 5, 2021); *Mitchell v. Advanced JCS, LLC*, No. 4:21-cv-00155-P, 2021 WL 1247884, at *5 (N.D. Tex. Apr. 5, 2021), *appeal filed*, No. 21-10477 (5th Cir. May 7, 2021); *Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 539 (N.D. Tex. Apr. 1, 2021); *Est. of Cowan v. LP Columbia KY, LLC*, ___ F. Supp. 3d ___, 2021 WL 1225965, at *6 (W.D. Ky. Mar. 31, 2021); *Gibbs ex rel. Est. of Velasquez v. Se. SNF LLC*, No. 20-cv-01333, 2021 WL 1186626, at *3 (W.D. Tex. Mar. 30, 2021); *Maltbia v. Big Blue Healthcare, Inc*, No. 20-2607-DDC-KGG, 2021 WL 1196445, at *12 (D. Kan. Mar. 30, 2021); *Wright v. Encompass Health Rehab. Hosp. of Columbia, Inc.*, No. 3:20-02636-MGL, 2021 WL 1177440, at *5 (D.S.C. Mar. 29, 2021); *Stone v. Long Beach Healthcare Ctr., LLC*, No. 21-cv-326-JFW(PVCx), 2021 WL 1163572, at *6–7 (C.D. Cal. Mar. 26, 2021); *Lopez v. Life Care Ctrs. Am. Inc.*, No. 20-cv-0958 JCH/LF, 2021 WL 1121034, at *14–15 (D.N.M. Mar. 24, 2021); *Smith v. Colonial Care Ctr., Inc.*, No. 2:21-cv-00494-RGK-PD, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021), *appeal filed*, No. 21-55377 (9th Cir. Apr. 19, 2021); *Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-cv-09746-SB-PVC, 2021 WL 911951, at *4–5 (C.D. Cal. Mar. 1, 2021), *appeal filed*, No. 21-55302 (9th Cir. Mar. 31, 2021); *Robertson v. Big Blue Healthcare*, ___ F. Supp. 3d ___, 2021 WL 764566, at *10 (D. Kan. Feb. 26, 2021); *Lyons v. Cucumber Holdings, LLC*, ___ F. Supp. 3d ___, 2021 WL 364640, at *5–6 (C.D. Cal. Feb. 3, 2021), *appeal filed*, No. 21-55185 (9th Cir. Mar. 3, 2021); *Grohmann v. HCP Prairie Village KS OPCO LLC*, 516 F. Supp. 3d 1267, 1281–82 (D. Kan. 2021); *Goldblatt v. HCP Prairie Village KS OPCO LLS*, 516 F. Supp. 3d 1251, 1264–65 (D. Kan. 2021); *Anson v. HCP Prairie Village KS OpCo LLC*, ___ F. Supp. 3d ___, 2021 WL 308156, at *11 (D. Kan. Jan. 29, 2021); *Est. of Smith v. Bristol at Tampa Rehab. & Nursing Ctr., LLC*, No. 8:20-cv-2798-T-60SPF, 2021 WL 100376, at *2 (M.D. Fla. Jan. 12, 2021); *Parker through Parker v. St. Jude Operating Co. LLC*, No. 3:20-cv-01325-HZ, 2020 WL 8362407, at *5–6 (D. Or. Dec. 28, 2020); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-cv-1546-T-36TGW, 2020 WL 8461513, at *5 (M.D. Fla. Oct. 29, 2020); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-cv-1198, 2020 WL 6140474, at *8 (W.D. Pa. Oct. 16, 2020), *appeal filed*, No. 20-3287 (3d Cir. Nov. 10, 2020); *Saldana v. Glenhaven Healthcare LLC*, No. 20-cv-5631 (FMO) (MAA), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020), *appeal filed*, No. 20-56194 (9th Cir. Nov. 13, 2020); *Est. of Jones v. St. Jude Operating Co., LLC*, No. 3:20-cv-01088-SB, 2020 WL 8361924, at *10 (D. Or. Oct. 14, 2020); *Martin v. Serrano Post Acute LLC*, No. 20-cv-5937 DSF (SKx), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10, 2020), *appeal filed*, No. 20-56078 (9th Cir. Oct. 19, 2020).

7

that they will not face liability for having done so." *Est. of Maglioli v. Andover Subacute Rehab. Ctr.*, 478 F. Supp. 3d 518, 529 (D.N.J. 2020), *appeal filed*, No. 20-2834 (3d Cir. Sept. 10, 2020). "Nothing in the language of the Act suggests that it was intended to more broadly displace state-law causes of action for, e.g., malpractice or substandard care . . . ." *Id.*

Because the PREP Act does not foreclose state-law tort claims based on nonfeasance, courts have rejected attempts to remove failure-to-act claims to federal court under the complete preemption doctrine. Some courts have denied removal because, so long as the PREP Act does not foreclose state-law tort claims related to matters covered under the Secretary's PREP Act declarations, the statute does not so forcefully replace state law as to amount to complete preemption. Chanlon Kaufman, Note, *In the Wake of COVID-19: The Uphill Battle of Litigation for Nursing Homes*, 42 U. LA VERNE L. REV. 57, 85 (2021) (citing *Maglioli*, 478 F. Supp. 3d at 529). Other courts have denied removal on the basis that failure-to-act claims fall outside the PREP Act, making the issue of complete preemption moot. *Id.* at 86 (citing *Campbell*, 2020 WL 4815082, at *3–4). Either way leads to the same result—failure-to-act state-law tort claims cannot be removed to federal court based on complete preemption under the PREP Act.

Lollie's claims are based on The Colonnades's inaction, not on its use or administration of covered countermeasures. (Docket Entry No. 1-3 at ¶ 14 ("Defendants failed to properly monitor and care for [Ms.] Lollie.")). *See also Lyons*, 2021 WL 364640, at *5 ("As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures."); *Gibbs*, 2021 WL 1186626, at *3 ("Plaintiff's allegations that failures to wash hands, follow internal policies and procedures, and adequately staff Southeast do not implicate any *countermeasure* identified in the PREP Act or added by amendments to the Declaration." (emphasis in original)). In response to Lollie's motion to remand, The Colonnades

8

submitted select medical records for Ms. Lollie from its facility stating that it "used and administered numerous covered countermeasures" when treating Ms. Lollie for COVID-19, including "supplemental oxygen, temperature checks, and COVID screenings, as well as the implementation [of] strict droplet precautions which included various forms of PPE." (Docket Entry No. 12 at 2 (citing Docket Entry No. 12-1)). Lollie did not base his claims on the misuse by The Colonnades of covered countermeasures when it treated Ms. Lollie for COVID-19. The petition alleges that The Colonnades failed to train and have adequate levels of staff, failed to implement COVID-19 protocols and plans, failed to take appropriate measures to prevent Ms. Lollie from contracting COVID, and failed to treat her when she did. CHARLES A. WRIGHT & MARY KAY KANE, 20 FED. PRAC. & PROC. DESKBOOK § 40 (2d ed. 2019) ("Plaintiff is master of the claim, and if he or she chooses not to assert a federal claim, though one is available, defendant cannot remove on the basis of a federal question.").

The Colonnades argues that because the Secretary incorporated the Health and Human Services Department's Advisory Opinions that the Prep Act preempts state-law claims into the Secretary's COVID-19 Declaration, those opinions bind federal courts. Most relevant are the Advisory Opinions 20-04 and 21-01 and the Fourth Amendment to the COVID-19 Declaration. Advisory Opinion 20-04 stated that "administration" of a covered countermeasure includes instances when a covered person fails to provide a vaccine in accordance with CDC directions or vaccination priority and makes similar decisions about "security and queuing." *See* Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act, Oct. 22, 2020, as Modified on Oct. 23, 2020, at 6–7, *available at* https://tinyurl.com/2yd988vp (last visited Sept. 8, 2021).

The Fourth Amendment to the Secretary's Declaration states that it "must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and Declaration (Advisory Opinions)." *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79,190, 79,191 & n.5 (Dec. 9, 2020). The Fourth Amendment clarified that "administration" includes circumstances in which: (1) "there are limited Covered Countermeasures"; and (2) a covered person does not administer "a Covered Countermeasure to one individual in order to administer it to another individual." *Id.* at 79,197. Courts interpreting the Fourth Amendment and the incorporated opinion have recognized that "there is only immunity for 'inaction claims' when the failure to administer a covered countermeasure to one individual has 'a close causal relationship' to the administration of that covered countermeasure to another individual." *Lyons*, 2021 WL 364640, at *4 (quoting *Anson*, 2021 WL 308156, at *9). The Fourth Amendment supported the proposition that misfeasance claims could fall within the scope of PREP Act immunity.

In response to requests for additional guidance on the types of inaction that falls within the scope of PREP Act immunity, the Department issued Advisory Opinion 21-01, stating that the PREP Act is a "complete preemption statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." *See* Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, Jan. 8, 2021, at 2, *available at* https://tinyurl.com/4xm9t8ad (last visited Sept. 7, 2021). The Advisory Opinion again, however, relied on the example of a covered person failing to provide "Covered Countermeasures," such as vaccines, as part of distribution decisions, to support the position that

10

inaction triggers PREP Act immunity. *Id.* at 3. The Opinion also noted that "the failure to purchase any [personal protective equipment], if not the outcome of some form of decision-making process, may not be sufficient to trigger the PREP Act." *Id.* The Opinion made clear that it was "not a final agency action or a final order" and did "not have the force or effect of law." *Id.* at 5.[2]

Other than two outlier cases,[3] courts have consistently held that Advisory Opinion 21-01 does not show that the PREP Act completely preempts state claims alleging failures to adequately implement protective measures against COVID-19 when those failures are not related to other decisions regarding distribution and queuing. First, courts have reasoned that Advisory Opinion 21-01 "primarily reiterated the statement in the Fourth Amendment that prioritization and purposeful allocation of covered countermeasures can relate to the administration or use of the same." *Saunders*, 2021 WL 764567, at *10 n.16; *see also Goldblatt*, 516 F. Supp. 3d at 1262 n.5; *Lopez*, 2021 WL 1121034, at *12; *Hatcher v. HCP Prairie Village KS OPCO LLC*, 515 F. Supp. 3d 1152, 1161–62 (D. Kan. Jan. 27, 2021), *appeal filed*, No. 21-7017 (D.C. Cir. Feb. 24, 2021).

Second, courts have noted the statement in Advisory Opinion 21-01 that it "does not have the force or effect of law" to conclude that the Opinion is not entitled to *Chevron* deference. *Dupervil*, 516 F. Supp. 3d at 252; *Brown*, 2021 WL 886217, at *7; *Bolton*, 2021 WL 1561306, at

---

[2] The Colonnades also relies on the Secretary's Fifth Amendment to the Declaration, (*see* Docket Entry No. 1 at ¶ 34), which stated that "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law as described." *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 86 Fed. Reg. 78,72, 78,74 (Feb. 2, 2021). As recognized by another court, "the Secretary's declaration that '[t]he plain language of the PREP Act makes clear that there is complete preemption of state law' was in specific reference to its clarification that the PREP Act preempts state law that otherwise prohibits certain healthcare professionals from ordering and administering vaccines and did not provide any legal reasoning to support a broad declaration of complete preemption." *Padilla*, 2021 WL 1549689, at *5 (citing 86 Fed. Reg. 78,72).

[3] *See Garcia v. Welltower OpCo Group, LLC*, ___ F. Supp. 3d ___, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021), *appeal filed*, No. 21-55224 (9th Cir. Mar. 10, 2021); *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 1:21-cv-00334, 2021 U.S. Dist. LEXIS 105847 (W.D. La. Apr. 30, 2021).

*8; *Stone*, 2021 WL 1163572, at *6; *Winn*, 2021 WL 1292507, at *4 n.1; *Padilla*, 2021 WL 1549689, at *4; *Cowan*, 2021 WL 1225965, at *5; *Wright*, 2021 WL 1177440, at *4; *Khalek*, 2021 WL 2433963, at *5; *Mitchell*, 2021 WL 1247884, at *4.

Third, even if the disclaimer language did not exist, courts have recognized that agency interpretations are entitled to *Chevron* deference only when Congress has delegated authority to make rules carrying the force of law and that here, Congress did not delegate to the Department the "authority to interpret the jurisdiction of the federal courts." *Brown*, 2021 WL 886217, at *7 (citing *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)); *Bolton*, 2021 WL 1561306, at *8; *Wright*, 2021 WL 1177440, at *4. Fourth, courts have reasoned that Advisory Opinion 21-01's pronouncement that the PREP Act is a complete preemption statute lacks the power to persuade, because it "cites no cases for its proposition that an exclusive federal administrative remedy is sufficient for complete preemption," *Dupervil*, 516 F. Supp. 3d at 252, and fails to consider "significant difference" between complete preemption doctrine and ordinary preemption doctrine, *Lopez*, 2021 WL 1121034, at *13. *See also Brown*, 2021 WL 886217, at *8; *Bolton*, 2021 WL 1561306, at *8; *Stone*, 2021 WL 1163572, at *6; *Winn*, 2021 WL 1292507, at *4 n.1; *Padilla*, 2021 WL 1549689, at *4; *Cowan*, 2021 WL 1225965, at *5; *Wright*, 2021 WL 1177440, at *4; *Khalek*, 2021 WL 2433963, at *5; *Mitchell*, 2021 WL 1247884, at *4. This court agrees.[4]

Lollie's claims are not completely preempted by the PREP Act.

### B.     The Grable Doctrine

---

[4] The Colonnades also relies on a recent filing by the United States Attorney's Office in a similar case involving a nursing home. (*See* Docket Entry No. 1 at ¶ 36). There, the United States filed a statement of interest arguing that the PREP Act was like the Air Transportation Safety and System Stability Act ("ATSSSA"), which the Second Circuit determined was a complete preemption statute. Courts have consistently distinguished the ATSSSA from the PREP Act. *Dupervil*, 516 F. Supp. 3d at 253; *Shapnik*, 2021 WL 1614818, at *10–11; *Bolton*, 2021 WL 1561306, at *7; *Cowan*, 2021 WL 1225965, at *4; *Wright*, 2021 WL 1177440, at *4; *Mitchell*, 2021 WL 1247884, at *4. This court agrees and incorporates their reasoning.

Under the *Grable* doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; . . . [the] substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* at 260.

Courts holding that the PREP Act does not preempt state-law claims based on failures to implement COVID-19 safety protocols also hold, when asked to address the issue, that no embedded-federal-question establishes federal jurisdiction under the *Grable* doctrine. *Saunders*, 2021 WL 764567, at *11; *Dupervil*, 516 F. Supp. 3d at 257–58; *Goldblatt*, 516 F. Supp. 3d at 1264 n.7; *Lyons*, 2021 WL 364640, at *6; *Bolton*, 2021 WL 1561306, at *5; *Martin*, 2020 WL 5422949, at *2–3; *Maltbia*, 2021 WL 1196445, at *12 n.12; *Stone*, 2021 WL 1163572, at *7–8; *Winn*, 2021 WL 1292507, at *5; *Lozano*, 2021 WL 1381232, at *4; *Jenkins*, 2021 WL 3563545, at *5–6; *Padilla*, 2021 WL 1549689, at *6; *Reed*, 2021 WL 2633156, at *8; *Cowan*, 2021 WL 1225965, at *6; *Gwilt*, 2021 WL 2373768, at *6; *Khalek*, 2021 WL 2433963, at *7; *Heim*, 2021 WL 3630374, at *4–5; *Acosta*, 2021 WL 3089332, at *5; *Elliot*, 2021 WL 2688600, at *6; *Rae*, 2021 WL 2290776, at *3. The courts have found that no substantial federal question is implicated by state-law claims that do not fall under the PREP Act, and that the PREP Act is not an essential element of the state-law claims. *Saunders*, 2021 WL 764567, at *11.

Lollie's claims do not present a substantial federal question under the *Grable* doctrine.

C. **Federal Officer Removal**

The Federal Officer Removal statute states:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States . . . :
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ....

28 U.S.C. § 1442(a)(1).

"Federal officers may remove cases to federal court that ordinary federal question removal would not reach." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020). "[S]ection 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response." *Id*. The Supreme Court has consistently urged courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

Although courts interpret § 1442(a)(1) broadly, "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007) (emphasis in original). "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Id.* at 153. "And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.*

The Colonnades argues that it is a private nursing facility that complied with federal guidelines and regulations related to COVID-19, and that this compliance made it part of an "essential critical infrastructure workforce" under an agency advisory list, not "a federal directive or standard." *See* U.S. Dep't of Homeland Security, Advisory Memorandum on Identification of

Essential Critical Infrastructure Workers During COVID-19 Response (Mar. 28, 2020), *available at* https://tinyurl.com/p5fphbkt (last visited Sept. 9, 2021). This argument does not show that The Colonnades was acting under a federal officer or agency so as to trigger removal under § 1442(a)(1). *See, e.g.*, *Maglioli*, 478 F. Supp. 3d at 535; *Dupervil*, 516 F. Supp. 3d at 259–61; *Lyons*, 2021 WL 364640, at *3; *Martin*, 2020 WL 5422949, at *1; *Saldana*, 2020 WL 6713995, at *3; *Stone*, 2021 WL 1163572, at *8; *Winn*, 2021 WL 1292507, at *6; *Lozano*, 2021 WL 1381232, at *5; *Jenkins*, 2021 WL 3563545, at *6–7; *McCalebb*, 2021 WL 911951, at *6–7; *Reed*, 2021 WL 2633156, at *8; *Khalek*, 2021 WL 2433963, at *8; *Smith*, 2021 WL 1087284, at *7–8; *Heim*, 2021 WL 3630374, at *5; *Acosta*, 2021 WL 3089332, at *6; *Elliot*, 2021 WL 2688600, at *5.

The Colonnades relies on *Fields v. Brown*, ___ F. Supp. ___, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021), and *Wazelle v. Tyson Foods, Inc.*, No. 2:20-CV-203-Z, 2021 WL 2637335 (N.D. Tex. June 25, 2021). These cases also arose during COVID. In *Fields* and *Wazelle*, a chicken plant was designated as a critical infrastructure under an Executive Order and plant management was "in close contact with officials at the U.S. Department of Homeland Security and the U.S. Department of Agriculture regarding continued operations" during COVID and participated in a meeting with President Trump. *Fields*, 2021 WL 510620, at *2–3; *Wazelle*, 2021 WL 2637335, at *3–4. The plant had U.S. Food Safety and Inspection Service officers onsite to ensure that it maintained operations, and the plant worked with federal agencies to provide personal protective equipment to its employees. *Fields*, 2021 WL 510620, at *3; *Wazelle*, 2021 WL 2637335, at *4. The plant was sued for negligence and gross negligence by employees who were exposed to and contracted COVID-19. *Fields*, 2021 WL 510620, at *1; *Wazelle*, 2021 WL 2637335, at *1. The courts held that the plant could remove under federal officer removal because it "exhibited 'an effort to help assist, or carry out, the duties and tasks of the federal superior,'" *Fields*, 2021 WL

15

510620, at *3 (quoting *Watson*, 551 U.S. at 152), by "working directly with the Department of Agriculture and the FSIS to guarantee that there was an adequate food supply," *Fields*, 2021 WL 510620, at *3. *See also Wazelle*, 2021 WL 2637335, at *4. By contrast, The Colonnades did not argue that it was viewed as critical infrastructure under an Executive Order, or that its management worked directly with federal agencies in guaranteeing an aspect of national health or safety.

The Colonnades has not shown a basis to support federal officer removal.

### D.     Attorney's Fees Under § 1447(c)

Lollie asks the court to award it the costs, expenses, and attorney's fees that it incurred because of removal, on the ground that The Colonnades knew, or should have known, that courts have remanded similar actions. (Docket Entry 10 at 24 (citing *Pellerin v. Altamonte Care of Texas, LLC, et al*, No. 4:21-cv-00655, Docket Entry No. 16 (S.D. Tex. June 3, 2021)). Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *Probasco v. Wal-Mart Stores Tex., L.L.C.*, 766 Fed. Appx. 34, 36 (5th Cir. 2019), *reh'g denied* (Apr. 24, 2019). The Colonnades had a reasonable ground to remove based on legal uncertainty within this district on how to interpret, and whether to give deference to, recent Health and Human Services Advisory Opinions and Amendments, in light of recent rulings in federal courts in California and Louisiana. The court finds remand proper, but that does not make the removal improper. No fees are awarded.

### III.     Conclusion

Lollie's motion to remand, (Docket Entry 10), is granted, but his fee request is denied. Remand is entered by separate order.

SIGNED on September 13, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge